C. Gene **ANDERSON** et al., Plaintiffs,

v.

**FRANCIS I. duPONT & CO.,** Louis N. **Ritten & Company,** and Nevin F. **Hench,** Defendants.

No. 4-67-Civ. 370.

United States District Court
D. Minnesota,
Fourth Division.

Oct. 2, 1968.

Harold D. Field, Jr., and Leonard, Street & Deinard, Minneapolis, Minn., for plaintiffs.

Robert M. Frisbee and Meagher, Geer, Markham & Anderson, Minneapolis, Minn., for defendant Louis N. Ritten & Co.

David S. Doty and G. Marc Whitehead and Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for defendant Francis I. duPont & Co.

Donald K. Smith and Smith, Johnson & Persian, Minneapolis, Minn., for defendant Hench.

## MEMORANDUM

LARSON, District Judge.

This is an action by some twenty-one plaintiffs seeking to recover general and punitive damages in connection with an alleged fraudulent scheme involving dealings in the commodities market. Plaintiffs allege that defendant Nevin F. Hench (Hench) solicited money from them to invest in the commodities market with the guarantee that it would be returned to them at profits of up to sixty per cent. They also claim that Hench was dealing in unlisted securities and was acting as a broker-dealer and/or commission merchant while unlicensed and unregistered.

It is conceded that Hench was never properly registered and did, in fact, engage in extensive illegal trading with other people's money. Hench or "bagmen" employed by him would solicit cus-

tomers through representations of skill on Hench's part. The money received would be deposited in one of Hench's various bank accounts and later invested at Louis N. Ritten & Company (Ritten) or Francis I. duPont & Company (du-Pont) by use of Hench's personal check or, on rare occasions, by cash. None of the plaintiffs' money went directly from them to the brokerage houses. In return for their money plaintiffs received two promissory notes, varying in terms, but invariably bearing "legal rate" of interest on one and a usurious rate of from twenty to sixty per cent on the other.

The scheme inevitably failed and developed into "kiting" rather than investing, with Hench using new money to pay off old debts. When the collapse came many people, including plaintiffs, lost money.

The complaint against duPont and Ritten, the defendant brokerage firms, is that they aided and abetted Hench in this scheme by allowing him to use their office and telephone facilities, by permitting Hench to engage in extensive trading, by allowing him to duplicate various market materials, and by allowing him to bring various visitors to the brokerage houses. Thus, it is alleged, duPont and Ritten allowed Hench to obtain customers by trading "on the use of their established reputations," when they knew or should have known that he was engaged in illegal and fraudulent activities. Plaintiffs also claim that duPont and Ritten supported statements by Hench that he was solvent, that he had never lost money speculating, and that he usually made a fifty per cent profit on his dealings. It is claimed that duPont and Ritten had an obligation to thoroughly investigate Hench's financial position.

All plaintiffs are citizens of Minnesota, as is Ritten, and are seeking Federal jurisdiction by alleging violations of Federal statutes relating to the trading of securities and commodities.

Ritten has moved for summary judgment as to plaintiffs' claims under the Securities Act of 1933 and the Securities Exchange Act of 1934. DuPont has joined in the motion by affidavit of counsel. It is these defendants' contention that this Court lacks subject matter jurisdiction because Hench was not selling securities as that term is defined in the Securities Acts. Defendants Ritten and duPont have labelled their motion one for summary judgment, though a motion claiming lack of subject matter jurisdiction would be proper under Rule 12(b) (1). "Security" is defined in § 3 of the Securities Exchange Act, 15 U.S. C. § 78c(a) (10), as follows:

> "The term 'security' means any note, stock, treasury stock, bond debenture, certificate of interest or participation in any profit-sharing agreement or in * * * any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a 'security;' * * but shall not include currency or any note, draft, bill of exchange or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months * * *."

The Supreme Court has recently provided guidelines for the interpretation of this section of the Act. In Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), the Court pointed out that the definition of security in § 2(1) of the 1933 act is virtually identical to the 1934 Act definition. For this reason the Court referred to decisions under the 1933 Act for aid in construing the 1934 Act definition. The Court also stated that the Securities Exchange Act, as remedial legislation, should be broadly construed in order to effectuate its purpose. In addition, the Court stated that "in searching for the meaning and scope of the word 'security' in the Act, form should be disregarded for substance and the emphasis should be on economic reality. S.E.C. v. W. J. Howey Co., 328 U.S. 293, 298, 66 S.Ct.

1100, 90 L.Ed. 1244, 163 A.L.R. 1043 (1946)."

In the instant case the "investor" gave money to Hench and received from him two promissory notes, one for the "legal rate" of interest and one which provided for "x% increase on the sum of $_____ invested." The transactions were thus cast in the form of a personal loan at a usurious rate of interest.

Plaintiffs claim that in substance these transactions were investments for profit, not loans. Plaintiffs allege that they were induced to invest money with Hench on the basis of certain oral representations made to them by Hench. Hench told them that he was a commodities trader and that he was running an investment pool. He represented that their individual contributions to the investment fund would enable him to increase profits for all members of the fund and that he could guarantee a profit of up to sixty per cent on the sums invested.

Defendants admit that promissory notes are included within the ambit of the Acts, but point out that the 1934 Act does not apply to any note "which has a maturity at the time of issuance of not exceeding nine months." 15 U.S.C. § 78c(a) (10).

Defendants contend that the Court may not look to the oral representations of Hench, but must confine itself to the terms of the promissory notes. However, in S.E.C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L. Ed. 88 (1943), the Court stated:

"It would be necessary in any case for any kind of relief to prove that documents being sold were securities under the Act. In some cases it might be done by proving the document itself, which on its face would be a note, bond, or a share of stock. In others proof must go outside the instrument itself * * *." 320 U.S. at 355, 64 S.Ct. at 125.

In S.E.C. v. Addison, 194 F.Supp. 709 (N.D.Tex.1961), the Court held that an oral agreement was a security and stated:

"The legislative history of the Securities Act of 1933 makes it clear that this statute cannot be circumvented by simply refraining from issuing a written instrument evidencing the security transaction. The statute applies regardless of whether such securities are represented by any document. * * * *" 194 F.Supp. at 722.

■ The oral terms of the contract between Hench and the individual plaintiffs fit precisely the definition of an investment contract set forth in S.E.C. v. W. J. Howey Co., 328 U.S. 293, 66 S. Ct. 1100, 90 L.Ed. 1244, 163 A.L.R. 1043 (1946):

"[A]n investment contract for the purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. at 298, 66 S.Ct. at 1103.

Therefore, since an instrument may fit under more than one category in the statutory definition, Tcherepnin v. Knight, supra, the Court may consider these instruments to be investment contracts and retain jurisdiction under the Act.

■ However, even assuming that the instruments in question are notes, the Act would still apply even conceding the fact that all but one would reach maturity in less than nine months. The exclusionary language of § 78c(a) (10) is virtually identical to the language of § 3(a) (3) of the 1933 Act and applies to the same type of short term notes as the 1933 Act. 2 L. Loss, Securities Regulation 797–98 (2d ed. 1961). Both these sections apply to "short term paper of the type available for discount at a Federal Reserve bank and of a type which rarely is bought by private investors." 1 L. Loss, Securities Regulation 566–68 (2d ed. 1961), quoting H.R.Rep. No. 85, 73d Cong., 1st Sess. 14 (1933). The notes involved in this case are clear-

ly not of the type Congress intended to exclude from coverage. Reference to cases decided under the 1933 Act confirm this interpretation of the exclusionary language.

In Llanos v. United States, 206 F.2d 852 (9th Cir. 1953), cert. denied, 346 U. S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954), promissory notes payable in 60–90 days were held to be securities. In S.E.C. v. Wickham, 12 F.Supp. 245 (D. Minn.1935), "contracts" promising repayment within ninety days of money invested in the commodities market were held to be securities. In S.E.C. v. Vanco, Inc., 166 F.Supp. 422 (D. N.J.1958), aff'd 283 F.2d 304 (3d Cir. 1960), renewable promissory notes maturing in six months were held to be securities.

These cases coupled with the Supreme Court's admonition to construe the Securities Acts broadly in order to effectuate their purposes preclude this Court from granting summary judgment on this ground.

■ Defendants next argue that since all the plaintiffs knew and intended that their money would be used to purchase commodities futures contracts, the transactions are not covered by the Securities Acts since such contracts are not securities. Defendants base this argument on Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 253 F. Supp. 359 (S.D. N.Y.1966). Sinva held that contracts to purchase sugar for future delivery were not securities within the meaning of the Securities Acts. However, this holding was based in part upon the fact that the purchase of these contracts "involves no reliance on the efforts of promoters, managers, employees or any third party." In the instant case, however, plaintiffs did rely upon the continuing efforts of Hench to bring about their expected return. In this respect the instant case is distinguishable from Sinva. Maheu v. Reynolds & Co., 282 F.Supp. 423 (S.D. N.Y.1967), and Berman v. Orimex Trading, Inc., 291 F.Supp. 701 (S.D.N.Y.1968), are more nearly in point. Maheu held that a joint account which was managed and super-

vised by the brokerage house as a "discretionary commodities account" was an investment contract within the definition of security in the 1933 and 1934 Acts. Berman held that a discretionary account to trade in cocoa futures was an investment contract within the meaning of the 1933 Act.

It is clear that the arrangements that plaintiffs had with Hench were more nearly that of a "discretionary account." Hench was not a mere means of purchasing commodities as in Sinva. He was in complete control of the "investment program" and all transactions in the market were at his discretion and it was this discretion upon which the plaintiffs relied. Therefore, these instruments are not taken out of the jurisdiction of this Court by the Sinva case. See also S.E.C. v. Wickham, supra.

■ Plaintiffs allege that duPont and Ritten are liable to plaintiffs under § 10(b) and Rule 10b–5 and § 20(a) of the Securities Exchange Act of 1934. Under § 10(b) and Rule 10b–5 knowing assistance of or participation in a fraudulent scheme gives rise to liability equal to that of the perpetrators themselves. Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D. N.Y.1963), and Brennan v. Midwestern Life Ins. Co., 259 F. Supp. 673 (N.D. Ind.1966). An aider and abettor may be liable for damages even though his assistance of the scheme consists of mere silence or inaction. Brennan, supra. Here plaintiffs have alleged that Hench was assisted in his activities by duPont and Ritten. Plaintiffs claim that these defendants gave Hench office space, endorsed his skill and standing as a commodities trader, and held him out as a favored and valued customer.

Section 20(a) of the Securities Exchange Act provides:

"Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such

controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. * * *"

Although the cases holding a controlling person liable usually involve employees, Lorenz v. Watson, 258 F. Supp. 724 (E.D. Pa.1966); Hecht v. Harris, Upham & Co., 283 F.Supp. 417 (N.D. Cal.1968), the Acts are not limited to this relationship. The Eighth Circuit has adopted a broad construction of the term "controlling persons."

"The statute is remedial and is to be construed liberally. It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable. * * *" Myzel v. Fields, 386 F.2d 718, 738 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).

Under this test it cannot be said at this time that duPont and Ritten are not controlling persons within the meaning of the Act.

Defendants challenge the jurisdiction of this Court to grant plaintiffs relief under the Commodities Exchange Act. Plaintiffs meet this challenge by citing Goodman v. H. Hentz & Co., 265 F.Supp. 440 (N.D. Ill.1967). In *Goodman* an employee of a registered commission merchant represented to several plaintiffs that he had bought and sold commodities for them when, in fact, he had converted their money to his own use. The Court held that this allegation was sufficient to state a cause of action against the commission merchant under the Commodities Exchange Act. The Court stated:

"Violation of a legislative enactment by doing a prohibited act makes the actor liable for an invasion of the interest of another if: (1) the intent of the enactment is exclusively or in part to protect the interest of the other as an individual; and (2) the interest invaded is one which the enactment is intended to protect. Restatement, Torts, Section 286. Violation of the standard of conduct set out in Section 6b of the Commodity Exchange Act is a tort for which plaintiffs, as members of the class Congress sought to protect from the type of harm they allege here, have a federal civil remedy even in the absence of specific mention of a civil remedy in the Commodity Exchange Act. The Restatement rationale was the basis for the presently well accepted rule that a civil remedy cognizable in the federal courts will be implied for a defrauded investor under Section 78j of the Securities Act of 1934 and Securities and Exchange Commission regulation 10b–5 thereunder. Kardon v. National Gypsum Co., D.C., 69 F.Supp. 512 (1946).

* * * * * *

"There is no indication in the Commodity Exchange Act that Congress intended not to allow private persons injured in violations access to the federal courts.

"This court therefore holds that plaintiffs * * * have stated a cause of action arising under the Commodity Exchange Act." 265 F.Supp. at 447.

Plaintiffs here allege that defendants violated and/or aided and abetted Hench in violating the Commodity Exchange Act and the rules and regulations promulgated thereunder. These allegations are sufficient to sustain plaintiffs' cause of action against a motion for summary judgment.

For the foregoing reasons defendants' motion for summary judgment is denied.

Defendant Ritten has moved for an Order granting it a separate trial on all issues. Defendant duPont has joined in the motion by affidavit of counsel. Neither Ritten nor duPont claim to have

any grounds to separate the trial as to the third defendant—Hench.

The basis of Ritten's motion is that the only common issue between plaintiffs and the three named defendants is plaintiffs' allegation of conspiracy, and that to compel the defendant to sit through the trial of the issues between plaintiffs and defendant duPont would amount to confusion of the issues, an unduly long trial, and unnecessary expense to all concerned.

The basis of duPont's motion is that it would be prejudiced by exposure to common liability with Ritten as a co-defendant, primarily through confusion due to the length of trial and the complexity of the issues. Defendant duPont also asserts that because its dealings with Hench were fewer in number than were the dealings between Hench and Ritten, the joint trial would prejudice duPont in being associated with Ritten.

 Rule 20 of the Federal Rules of Civil Procedure provides for the permissive joinder of defendants:

> "if there is asserted against them jointly, severally or in the alternative, any right of relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more of the defendants according to their respective liabilities."

Rule 20 is intended primarily to promote trial convenience through the avoidance of multiple lawsuits, extra expense to the parties, and loss of time to the Court and the parties. 3A Moore, Federal Practice, Para. 20.02 (2d Ed. 1968). By Rule 20 the Court is given wide discretion to shape the trial to the necessities of the particular situation. Thus, where it will foster—instead of avoid—delay, confusion and inconvenience of witnesses, separate trials should be avoided. Chappel & Co. v. Santangelo, 30 F.Supp. 599 (D.C. Conn.1939).

It is not disputed by Ritten and duPont that as to each of them the issues are the same, namely, whether defendant Hench was selling "securities" within the meaning of the Securities Act of 1933 and the Securities Exchange Act of 1934, whether the Commodities Exchange Act applies, whether Ritten and duPont were controlling persons with respect to Hench, whether duPont and Ritten aided and abetted Hench in carrying out these schemes, etc. But there is also another factor common to both Ritten and duPont, namely defendant Hench. Plaintiffs point out that there is virtually no way to connect most of them to either duPont or Ritten by tracing their investments with Hench. The facts as alleged indicate that money given to Hench by various persons was pooled, that some of it did not get to the commodity market, and that some money may have been placed with duPont or Ritten or both. From this standpoint at least, it can be said the transactions were common to both Ritten and duPont, and were not separate transactions.

Were separate trials to be granted, it is apparent that there would be a significant duplication of testimony, with the same witnesses relating their dealings with Hench. Hench's own testimony as to the nature of the representations he made and other information as to his operations would also be the same.

 DuPont and Ritten argue that the jury will become confused due to the length of trial and the complexity of the issues, and will therefore be unable to keep clearly in mind the facts as to each defendant. Such a claim has been held to be not a showing of prejudice. Fleischman v. Harwood, 10 F.R.D. 139 (D.C. N.Y.1950); Eichinger v. Fireman's Fund Ins. Co., 20 F.R.D. 204 (D. C. Neb.1957). But it is also clear that

any danger of prejudice resulting from a joint trial can be avoided by proper instructions to the jury. Grissom v. Union P. R. R., 14 F.R.D. 263 (D.C. Colo. 1953); Psaroumbas v. United Greek Shipowners Corp., 5 F.R.D. 398 (D.C. N.Y.1946). As the Court in *Psaroumbas* points out, the refusal to try the cases separately also avoids the possibility of perverse verdicts against plaintiffs.

■ DuPont cites Goodman v. H. Hentz & Co., supra, in support of its motion for separate trials. In that case the plaintiffs were customers of H. Hentz & Company. The defendants were five partners of H. Hentz & Company and Rubloff, a registered representative and agent of H. Hentz & Company. A default judgment had been entered against Rubloff. The Court points out that Rule 20 "should be given the liberal interpretation needed to implement its apparent purpose: the avoidance of multiple trials involving many similar or identical issues." Goodman v. Hentz, supra, 265 F.Supp. p. 443. DuPont cites dicta from *Goodman* to the effect that where a jury might be inclined to find in favor of all plaintiffs on the liability issue because of the stronger case made by some plaintiffs, the Court would "in its discretion" order separate trials. No such showing has been made here, either by affidavits of counsel or by discovery materials. The fact that there might have been more transactions involving one defendant is not relevant to the issue of liability, only to damages.

There is also some indication in affidavits filed by plaintiffs that there will be evidence at trial directed at proving a conspiracy between duPont and Ritten. Counsel concede that prospective proof of this claim would cut against separate trials.

For the above stated reasons, the motions of defendants Ritten and duPont for separate trials must be denied.