Ben R. JOHNSON, as a shareholder and
in the right of Pennon, Inc.,
Plaintiff,

v.

ARTHUR ESPEY, SHEARSON, HAM-
MILL & CO. and Pennon, Inc.,
Defendants.

No. 70 Civ. 2704.

United States District Court,
S. D. New York.

Feb. 3, 1972.

Thomas A. Butler, Keane, Butler & Grean, New York City, for plaintiff.

Alvin M. Stein and Joel M. Wolosky, Parker, Chapin & Flattau, New York City, for defendant Shearson, Hammill & Co.

MOTLEY, District Judge.

*Memorandum Opinion and Order*

This action arises out of the alleged "churning"—excessive trading in order to generate commissions—of a commodities account belonging to Pennon, Inc. (Pennon). Pennon's account was handled by defendant Arthur Espey (Espey), a registered representative for defendant Shearson, Hammill & Co. (Shearson), a broker-dealer. Plaintiff Ben R. Johnson (Johnson) is a shareholder of Pennon and brings this suit on its behalf.

He alleges the following factual account. In 1966 Espey solicited the individual shareholders of Pennon, prior to its formation, to open a commodities account through the corporate vehicle of Pennon. Pennon was thereafter formed as a corporation. Espey solicited Pennon to open a commodities account at Shearson, representing, among other things, that Shearson was expert in the commodities field and would use its expertise to benefit Pennon and that Pennon would incur no loss. Pennon did open an account in reliance on these representations.

Plaintiff goes on to allege that Espey knew Pennon was relying on his and Shearson's knowledge in the commodi-

ties field and that, in fact, Espey and Shearson "had control over the nature and volume of the transactions in the account" (Amended complaint ¶ 11). Presumably using that control, Espey and Shearson made an "excessive" number of purchases and sales, and engaged in extensive trading and "churning" disproportionate to the size of the account, in disregard of Pennon's interests and in furtherance of their own aim of producing commission income. This resulted in the depletion of the Pennon account and the payment of approximately $45,000 in commissions. (Amended complaint ¶ 12).

Defendant Shearson now moves to dismiss the amended complaint pursuant to Rule 12(b), Fed.R.Civ.P., on a number of grounds. First, Shearson contends that plaintiff has no claim under § 10(b), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 because there has been no purchase or sale of a "security," reasoning that a commodity future is not a security. Section 10(b) outlaws the use of deceptive and manipulative devices "in connection with the purchase or sale of any security." Section 3 of the Exchange Act, 15 U.S.C. § 78c(a)(10) defines security as, *inter alia*, an "investment contract." Courts in this Circuit have held that where the broker-dealer has control of investment decisions made for a commodities account and has represented that the profits will result from his efforts alone, then this "discretionary account" is in effect an investment contract. Maheu v. Reynolds & Co., 282 F.Supp. 423, 426 (S.D.N.Y.1968); Berman v. Orimex Trading Co., 291 F.Supp. 701, 702 (S.D.N.Y.1968). See also Anderson v. Francis I. du Pont & Co., 291 F.Supp. 705, 709 (D.Minn.1968). This type of commodities account is an investment contract even where there is no formal agreement designating it as a "discretionary account." Berman, *supra;* Anderson, *supra.* Since the complaint alleges that defendant Espey, supervised by Shearson, made the investment decisions and led Pennon to expect

profits solely from his efforts and expertise, plaintiff has stated a valid claim under § 10(b) and Rule 10b–5.

■ Defendant Shearson's second major contention is that plaintiff fails to state a claim under the Commodity Exchange Act, 7 U.S.C. § 1 et seq. The amended complaint charges "churning" of a commodities account in violation of 7 U.S.C. §§ 4 and 6b, but does not specify the particular commodities that were the subject of the transactions. Defendant claims that the failure to name the particular commodities makes the amended complaint legally insufficient. However, 7 U.S.C. § 2 lists the products that fall within the term "commodities," and it may be assumed that in charging a violation of § 6b of the Commodities Exchange Act plaintiffs are alleging that trades were made of items included in § 2. Rule 8(f), Fed.R.Civ.P. While it would have been advisable to describe the nature of the commodity transactions in greater detail in the complaint, this information is available to defendant from its own records and discovery. Should it develop that none of the trades involved a "§ 2 commodity," defendant has the convenient remedy of a motion for summary judgment.

Section 6b, under which plaintiff sues derivatively for damages, makes it unlawful for any member of a contract market "to cheat or defraud or attempt to cheat or defraud" persons for whom they deal.[1] Section 4 makes the principal liable for the acts, omissions or failures of its agents. There is no statutory provision expressly granting a private right for damages for violations of § 6b, and defendants contend that no private civil remedy should be implied against "churning" of commodity accounts. Though the question is apparently one of first impression in this Circuit, other courts have held that an implied right of action does exist under § 6b. Booth v. Peavey Company Commodity Services, 430 F.2d 132, 133 (8th Cir. 1970); Anderson v. Francis I. du Pont & Co., 291 F.Supp. 705, 710 (D.Minn. 1968); Goodman v. H. Hentz, 265 F.Supp. 440, 447 (N.D.Ill.1967), cited with approval in Hecht v. Harris, Upham & Co., 283 F.Supp. 417, 437 (N.D.Cal. 1968). We are persuaded by the reasoning of Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951) and *Goodman*, which, following Kardon v. National Gypsum, 69 F.Supp. 512 (E.D.Pa. 1946) [private right of action under § 10(b)], implied a civil liability where the intent of the statute is to protect the interest of the plaintiff, the interest invaded is one the statute is designed to protect, and there is no indication that Congress intended to bar private actions. 265 F.Supp. at 447.

■ Courts have held "churning" to be fraud within the meaning of § 10(b) of the Securities Exchange Act and Rule 10b–5 and § 17(a) of the Securities Act, 15 U.S.C. § 77q(a). Hecht v. Harris, Upham & Co., *supra*, 283 F.Supp. at 432 and cases cited therein. We now hold churning to be a means of fraud and cheat within the terms of 7 U.S.C. § 6b. Excessive trading disproportionate to the size and character of the account primarily for the purpose of generating commissions is as fraudulent when done in connection with commodities trading as it is in connection with securities.

■ Though we find that plaintiff does state valid claims for relief, we are constrained to dismiss the complaint without prejudice on the ground that plaintiff has failed to comply with Rule 23.1, Fed.R.Civ.P., and that he therefore may not bring this action derivatively in the right of Pennon.

---

1. Section 6b reads in pertinent part:

It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person . . . (A) to cheat or defraud or attempt to cheat or defraud such other person . . .

Rule 23.1 requires that the disgruntled shareholder show either that he exhausted all intracorporate means of redress or, alternatively, why such efforts would be futile. Plaintiff here has done neither. His amended complaint states that "the company is now inactive with no management, officers or directors; there is no one to plaintiff's knowledge, upon whom demand could be made. . . ." (¶ 18). Since a demand upon directors is an impossibility, "plaintiff must call a shareholders' meeting and there seek action against defendant before he will be permitted to institute suit." 3B Moore's Federal Practice (2d ed. 1969) ¶ 23.1.19. See Hawes v. City of Oakland, 104 U.S. 450, 461, 26 L.Ed. 827 (1882); Gottesman v. General Motors, 268 F.2d 194, 197 (2d Cir. 1959). Cf. Watts v. Vanderbilt, 45 F.2d 968 (2d Cir. 1930). Only when the shareholders refuse to take action can it be said that the corporate entity has breached its duty. Plaintiff has not made any effort to call such a meeting.

Whatever may be the practical difficulties of making demand on the shareholders in some situations, see e. g. Gottesman v. General Motors, supra, plaintiff here has not demonstrated that he could not easily attempt to call a shareholders meeting. It appears that Pennon has less than ten shareholders. (Amended complaint ¶ 8). Though plaintiff claims that all other shareholders but his wife and one other are unknown, he could readily discover their identity from the record of shareholders which he is legally entitled to examine. N.Y. Business Corporation Law § 624 (McKinney's Consol. Laws. c. 4, 1963). Furthermore, since plaintiff and his wife together own 29% of Pennon stock, their chance of winning a majority of the voting shares to their side seems relatively great.

Plaintiff does not give any valid reasons for not making demand on the other shareholders. It is irrelevant that he has made informal demand on the former president and controlling director and that he suspects this man of tacitly participating in the wrongs, since that man is no longer in a position to control Pennon's decision to bring suit.

Plaintiff's action is dismissed without prejudice to renew upon proper compliance with Rule 23.1.