**Darryl B. DEAKTOR, Plaintiff-Appellee,**

v.

**L. D. SCHREIBER & CO. et al., Defendants-Appellants.**

**Al PHILLIPS, Jr., et al., Plaintiffs-Appellees,**

v.

**The CHICAGO MERCANTILE EXCHANGE et al., Defendants-Appellants.**

**Nos. 71–1890, 71–1892, 71–1893.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1973.

Decided May 21, 1973.

Rehearing and Rehearing En Banc Denied June 29, 1973.

Castle, Senior Circuit Judge, concurred and filed opinion.

Thomas R. Mulroy, John L. Conlon, Lee A. Freeman, Jerrold E. Salzman, Chicago, Ill., for defendants-appellants.

Aaron M. Fine, Philadelphia, Pa., Jack Joseph, Bruce P. Bickner, Chicago, Ill., for plaintiffs-appellees.

Before CASTLE, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

These interlocutory appeals are from orders of the district court denying motions by defendant Chicago Mercantile Exchange and various other defendants to stay action in the district court pending the exercise of primary jurisdiction by the Commodity Exchange Commission.

Darryl B. Deaktor, plaintiff in Nos. 71–1890 and 71–1893, brought a class action against the Chicago Mercantile Exchange and various members of the Exchange alleging that the defendant members manipulated and cornered the July, 1970 frozen pork bellies futures contracts market, forcing up the price of those contracts and injuring traders, such as the plaintiff, who sold short and had not liquidated their positions prior to the defendants' manipulation and thus were required to cover their positions by the purchase of contracts at inflated prices. This conduct was alleged to be in violation of 7 U.S.C. § 1 et seq. of the Commodity Exchange Act. The Exchange was sued on the ground of failing to exercise reasonable care in compliance with 7 U.S.C. § 7a(8), and thus failing to be aware of and to promptly halt the unlawful activities of the defendants. Various member defendants and the Chicago Mercantile Exchange moved for a stay of proceedings on the ground that plaintiff should first be required to seek relief from the Commodity Exchange Commission. The district judge denied these motions on August 23, 1971. On October 14, 1971, he certified this order for interlocutory appeal under 28 U.S.C. § 1292(b).

The plaintiffs in No. 71–1892, Al Phillips, Jr., et al., are twenty-four traders who sued the Chicago Mercantile Exchange, certain of its officers and members of its Business Conduct Committee, charging the defendants with monopolizing trading in March, 1970 fresh eggs, causing the price to fall and forcing sales at artificially depressed market prices. This conduct was alleged to violate the notice and hearing provisions in Rule 217(D) of the Rules of the Chicago Mercantile Exchange, 7 U.S.C. §§ 7a(8) and 13(b) of the Commodity Exchange Act, and sections 1 and 2 of the Sherman Act. Defendants' motion for a stay in proceedings was denied by the district court on September 17, 1971. This

Court accepted interlocutory appeals in these cases and consolidated them.

The sole issue in these appeals is whether the district court could take jurisdiction of these actions or whether the Commodity Exchange Commission properly has primary jurisdiction over these proceedings. The defendants-appellants contend that the issue is decided, in their favor, by Ricci v. Chicago mercantile Exchange, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973). We have concluded that Ricci does not control these cases and that the district court was correct in refusing to stay proceedings to allow the exercise of primary jurisdiction by the Commodity Exchange Commission.

The Chicago Mercantile Exchange is a board of trade designated as a "contract market" by the Secretary of Agriculture pursuant to 7 U.S.C. § 7. Designation as a contract market is required before trading in contract futures can be conducted. In order to qualify as a contract market, the Chicago Mercantile Exchange was required to file with the Secretary its rules, regulations and by-laws, including rules "for the prevention of manipulation of prices and the cornering of any commodity by the dealers or operators upon such board." 7 U.S.C. § 7(d). It was required to

"enforce all bylaws, rules, regulations, and resolutions, made or issued by it or by the governing board thereof or any committee, which relate to terms and conditions in contracts of sale to be executed on or subject to the rules of such contract market or relate to other trading requirements, and which have not been disapproved by the Secretary of Agriculture . . . ." 7 U.S.C. § 7a(8).

Pursuant to this requirement, the Chicago Mercantile Exchange Rule 217(C) provided that the Business Conduct Committee be charged with the duty and authority to prevent manipulation of prices and the cornering of any commodity. Rule 217(D) gives the Business Conduct Committee authority to investi-

gate the transactions and financial condition of members, to examine their books, to prescribe capital requirements, and to issue cease and desist orders, after notice and hearing, to members found to be engaging in conduct which is "unfair or unjust."

No specific private remedy for violations of these provisions is provided. The Act does make it a felony

"for any person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, . . . or to corner or attempt to corner any such commodity, or knowingly to deliver . . . false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce." 7 U.S.C. § 13(b).

Other provisions authorize the Secretary of Agriculture and the Commodity Exchange Commission to take preventive and remedial action. Thus, 7 U.S.C. § 8 authorizes the Commission, after notice and hearing,

"to suspend for a period not to exceed six months or to revoke the designation of any board of trade as a 'contract market' upon a showing that such board of trade is not enforcing or has not enforced its rules of government . . . or that such board of trade, or any director, officer, agent, or employee thereof, otherwise is violating or has violated any of the provisions of this Act or any of the rules, regulations, or orders of the Secretary of Agriculture or the Commission thereunder."

Provision is also made for the Commission to enter cease and desist orders against any contract market, director, officer, agent or employee who violates any provision of the Act or rules thereunder. Failure to obey the order is declared to be a misdemeanor. 7 U.S.C. § 13a. The Secretary of Agriculture is authorized to disapprove any bylaw, rule, regulation or resolution issued or

proposed by a contract market which relates to terms and conditions in contracts of sale if he finds that it will violate any of the provisions of the Act or rules thereunder. 7 U.S.C. § 12a(7).

The Supreme Court considered this statutory scheme in the context of an antitrust suit alleging a conspiracy to restrain trade in the transfer of an Exchange membership in Ricci v. Chicago Mercantile Exchange, *supra*. The Court decided that in the circumstances there presented, the Commodity Exchange Commission should be given an opportunity to exercise jurisdiction prior to continuing the proceeding in the antitrust court. Although recognizing that the Commission could decide to refuse jurisdiction,[1] the majority of the *Ricci* Court felt that the combination of three factors present in that case outweighed this uncertainty. Those factors were (1) that it would be "essential for the Antitrust Court to determine whether the Commodity Exchange Act or any of its provisions are 'incompatible with the maintenance of an antitrust action,' . . . ; (2) that some facets of the dispute between Ricci and the Exchange [were] within the statutory jurisdiction of the Commodity Exchange Commission; and (3) that adjudication of that dispute by the Commission promise[d] to be of material aid in resolving the immunity question." 409 U.S. at 301, 93 S.Ct. at 580.

Regarding the first factor, the Court noted that although repeal of the antitrust laws was not to be lightly assumed the Commodity Exchange Act clearly contemplated a membership organization and standards for the acquisition, retention and loss of membership. The Court reasoned that if the petitioner had lost his membership pursuant to a valid rule, the first question which the antitrust court would have to decide was whether the rule itself was immune from antitrust attack. But, the Court continued, if petitioner Ricci lost his membership in contravention of Ex-

change rules, "the antitrust action should very likely take its normal course, absent more compelling indications of congressional intent than are present here that the jurisdictional and remedial powers of the Commodity Exchange Commission are exclusive." *Id.* at 303, 93 S.Ct. at 581.

Looking at the second factor underlying its decision, the Court, while expressly declining finally to decide the jurisdictional question, noted that the Court of Appeals had found that the membership rules of the Exchange were related to "trading requirements" and "were thus among those rules which the Exchange could not ignore without violating the Act and bringing itself within the jurisdiction of the Commission" to remedy any violation of the statute and underlying rules. *Id.*

The Court also decided that a prior determination by the Commodity Exchange Commission would be of material aid in resolving the immunity question because the issue turned in the first instance on whether the loss of Ricci's membership violated the Exchange rules, which in turn involved issues of fact and questions concerning the scope and significance of the rules. These were matters which the Court thought could best be dealt with by those especially familiar with the customs and practices of the industry. The Court concluded that with the aid of administrative action, if the conduct alleged was in accord with a valid rule, "the antitrust court will be in position to make a more intelligent and sensitive judgment as to whether the antitrust laws will punish what an apparently valid rule of the Exchange permits." *Id.* at 306, 93 S.Ct. at 583.

It can readily be seen that, except for the antitrust claim in No. 71–1892, these cases are unlike *Ricci* in one significant respect, in that the district court is not being asked to reconcile the possibly conflicting policies of two congressional acts. Rather, insofar as these actions are founded on alleged violations of the

---

1. 409 U.S. at 304, 93 S.Ct. at 582.

Commodity Exchange Act itself, the district court is simply being asked to do what it has traditionally been called upon to do in cases involving alleged violations of the securities acts, that is, to award monetary compensation to remedy the harm done by unlawful conduct. Therefore, if a private action exists under the Commodity Exchange Act, no reason appears why the discretionary jurisdiction of the Commission should be invoked prior to judicial proceedings, any more than the jurisdiction of any other agency need generally be invoked before commencing a private damage action. The plaintiffs do not allege that any rule of the Chicago Mercantile Exchange is in violation of the antitrust laws or even the Commodity Exchange Act. They simply allege that past conduct by the Exchange and certain of its members, alleged to violate rules of the Exchange and the Commodity Exchange Act, caused them monetary injury for which they seek damages.

It is argued, however, that although no conflicting policies between two acts are here involved, primary jurisdiction should nevertheless be held to rest in the Commodity Exchange Commission on account of the difficult questions involved, which may require expertise beyond that of the average judge or juror, and because of possible conflicts in the law resulting from the opinions of different judges. The latter point may be answered by noting that the personnel, policies and views of administrative agencies and commissions do not remain forever constant. Conflicts arise in agency interpretations of law as well as within the courts. Furthermore, there is no reason to believe that more conflicts will result from judicial intervention in this area than in any other more traditional sphere of judicial activity. Finally, inasmuch as affording the Commission

primary jurisdiction would not mean exclusive and final jurisdiction, there is no reason to conclude that whatever conflicts in the law may arise would be avoided by prior Commission action.

The argument that the Commission's expertise is needed and that judges and jurors would be unable to understand the issues involved may be answered in two ways.[2] First, deference to an administrative commission solely on the basis that lay persons will be unable to understand the proceedings has been shown by experience to be unwarranted. Judges and juries regularly decide patent cases, antitrust claims and complicated securities cases. There is no reason to believe that they would have more difficulty with factual issues involving the purchase and sale of commodities. If issues do become too complex for the average juror, special instructions or the aid of a special master can be utilized. Secondly, the issue is not primarily whether an agency has special expertise as such, but "whether some parts of the case are within the exclusive jurisdiction of the agency." 3 Davis, Administrative Law § 19.07 at 39 (1958). The Supreme Court in *Ricci* found prior Commission jurisdiction warranted in order to gain an agency ruling on whether the alleged Exchange action was in accord with Exchange rules. It stated, however, that should the Commission find that the Exchange action violated these rules, its jurisdiction would end, and "the antitrust action should very likely take its normal course, *absent more convincing indications of congressional intent than are present here that the jurisdictional and remedial powers of the Commodity Exchange Commission are exclusive.*" 409 U.S. at 303, 93 S.Ct. at 581 (emphasis added). Inasmuch as the defendants in the cause of action under consideration here are alleged to have violated valid

---

2. Appellants cite Far East Conference v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952), in which the Supreme Court stated, in deciding that the Federal Maritime Board should be given primary jurisdiction in an antitrust

case, that "in cases raising issues of fact not within the conventional expertise of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over."

rules, and the Supreme Court has strongly indicated that the Commodity Exchange Commission's jurisdiction is limited and non-exclusive, we see no reason to require the plaintiffs to invoke the discretionary jurisdiction of the Commission.

■ There remains the question whether private damage actions are allowable under the Commodity Exchange Act. As noted earlier, no express provision is contained in the Act. The courts which have considered the question, however, have apparently uniformly concluded that such an action exists. *E. g.*, Booth v. Peavey Co. Commodity Services, 430 F.2d 132 (8th Cir. 1970); Johnson v. Arthur Espey, Shearson, Hammill & Co., 341 F.Supp. 764 (S.D. N.Y.1972); McCurnin v. Kohlmeyer & Co., 340 F.Supp. 1338 (E.D.La.1972); United Egg Producers v. Bauer Int'l Corp., 311 F.Supp. 1375 (S.D.N.Y. 1970); Anderson v. Francis I. duPont & Co., 291 F.Supp. 705 (D.Minn.1968); Goodman v. H. Hentz & Co., 265 F.Supp. 440 (N.D.Ill.1967); 1 Bromberg, Securities Law: § 4.6 (353) (1971). The rationale was stated in *Goodman, supra,* 265 F.Supp. at 447:

"Violation of a legislative enactment by doing a prohibited act makes the actor liable for an invasion of the interest *of another if:* (1) the intent of the enactment is exclusively or in part to protect the interest of the other as an individual; and (2) the interest invaded is one which the enactment is intended to protect. Restatement, Torts, Section 286."

The purpose of the Commodity Exchange Act has been stated to be "to insure fair practice and honest dealing on the commodity exchanges and to provide a measure of control over those forms of speculative activity which too often demoralize the markets to the injury of producers and consumers and the exchanges themselves." Campbell, "Trading in Futures Under the Commodity Exchange Act," 26 Geo.Wash.L.Rev. 215, 223 (1958). It is a felony under 7 U.S.C. § 13(b) of the Act to manipulate or attempt to manipulate the price of any commodity or to corner or attempt to corner any such commodity. We think the enactment is at least in part intended to protect the interests of the plaintiff-traders in these actions. We therefore hold that a private cause of action exists under the Commodity Exchange Act in favor of the plaintiffs in these actions and that the district court was correct in permitting the plaintiffs to maintain their actions under the Commodity Exchange Act.

The issue of the antitrust allegation in Phillips v. Chicago Mercantile Exchange is somewhat more complicated. The Supreme Court in Ricci v. Chicago Mercantile Exchange, *supra,* did hold that an antitrust action in the district court should properly be stayed in order to allow the Commodity Exchange Commission to rule on the question whether the Chicago Mercantile Exchange actions were in accord with valid rules promulgated under the Commodity Exchange Act. We think, however, that the difference in approach to that case by the Court of Appeals and the Supreme Court emphasizes how the present case differs significantly from *Ricci* and that the scope of the doctrine of primary jurisdiction as applied to the Commodity Exchange Act by the Supreme Court in that case does not include the present alleged conduct. The Court of Appeals in *Ricci* found that the facts alleged by the plaintiff in support of his antitrust charge would constitute violations of the Commodity Exchange Act and thus could be examined by the Commodity Exchange Commission, stating that the maintenance of a private treble-damage suit in those circumstances would present a problem of coextensive coverage under two acts which might be repugnant to the policy of the Commodity Exchange Act. 447 F.2d 713 (7th Cir. 1971). The Supreme Court, in contrast, held that if the Commodity Exchange Commission found a violation of valid rules, that should end its inquiry and the antitrust action should proceed

in the absence of greater evidence that the Commodity Exchange Action remedies were to be exclusive.

This difference in the approaches of the two Courts indicates that our inquiry must focus on the particular conduct alleged to violate the antitrust laws and must consider whether it is arguably protected by the Commodity Exchange Act. In *Ricci,* the conduct was the transfer of a membership in the Chicago Mercantile Exchange without the permission of or even notice to the owner. Although in the absence of the Commodity Exchange Act such conduct appeared to be a clear violation of the antitrust laws, the Supreme Court held that the possibility that the Commodity Exchange Act limited the applicability of the antitrust laws in that case was "substantial." The reason for this was that Congress had declared that to deal in commodity futures at all one was required to be or deal through a member of a designated board of trade. "The Act clearly contemplates a membership organization and hence the existence of criteria for the acquisition, transfer and loss of membership." 409 U.S. at 303, 93 S.Ct. at 581. The Court noted that the Chicago Mercantile Exchange had promulgated such rules and was under the statutory duty to enforce them to the extent they were related to trading requirements. 7 U.S.C. § 7a(8). In contrast, the conduct alleged in the present case is in no way arguably protected by the rules of the Chicago Mercantile Exchange or the Commodity Exchange Act. In fact, the Act expressly prohibits manipulation of commodity prices and the cornering of any commodity. There would therefore be no possible conflict between the antitrust laws and the Commodity Exchange Act unless the Commodity Exchange Act were deemed to be the exclusive means of remedying violations of the two acts. The Supreme Court, in *Ricci,* however, decided that question adversely to the petitioners.

We see no further argument for staying the actions in the district court. The orders appealed from are therefore affirmed.

Affirmed.

CASTLE, Senior Circuit Judge (concurring).

The issue on this appeal is whether the district court abused its discretion in refusing to defer the issues raised by the various complaints to the primary jurisdiction of the Secretary of Agriculture or the Commodities Exchange Commission. I find no abuse of discretion, but I believe that the resolution of this issue is more difficult than the majority opinion indicates.

My understanding of the majority opinion is that deference is not warranted when the plaintiff alleges only that the defendants have violated provisions of the Commodities Exchange Act (the Act) or regulations whose validity he does not challenge. Respectfully, I believe that this approach is too mechanical for guidance beyond these cases,[1] and perhaps not sufficiently appreciative of the problems raised by Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973). For

---

1. There is support for the view that deference to administrative primary jurisdiction is not necessary when the only issues are whether a party has violated a valid statute or regulation and whether his activity is consequently clearly unlawful. Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 222, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966), Pennsylvania R.R. v. Puritan Coal Mining Co., 237 U.S. 121, 131–132, 35 S.Ct. 484, 59 L.Ed. 867 (1915), McCleneghan v. Union Stock Yards Co., 298 F.2d 659, 668 (8th Cir. 1962). As was noted in Crain v. Blue Grass Stockyards Co., 399 F.2d 868, 874 (6th Cir. 1968): ". . . it does not require administrative expertise to determine whether plaintiff violated rules and regulations and whether, because of such violation, defendants had the right to and did exclude plaintiff. . . ."

the appellants have argued that the question of whether they have violated the Act and/or valid exchange regulations is precisely one for administrative determination. Since all three cases are intricately related to the issue of market manipulation, appellants urge that the determinations of relevant market conditions, the existence of price fluctuations, and the advisability and legality of their activity require the exercise of administrative expertise. Only after deferring to the administrative expertise of the Secretary or the Commission, appellants contend, can a court adequately determine whether there has indeed been a violation of the Act or the regulations promulgated pursuant to it.

Appellants' argument certainly finds support in past cases which have commanded deference in order to allow administrative agencies to make preliminary comprehensive investigations and analyses of the facts involved and to apply them to a statutory scheme. Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 68, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970), Federal Maritime Board v. Isbrandtsen Co., 356 U.S. 481, 498, 78 S.Ct. 851, 2 L. Ed.2d 926 (1958), United States v. Western Pacific Ry., 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The same rationale has been applied to the Commodities Exchange Commission's fact-finding function in Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), where the court required deference to the administrative judgment of the Commodities Exchange Commission. In that case plaintiff Ricci, like the plaintiffs-appellees in the instant cases, alleged only that the Act and exchange rules had been violated. 409 U.S. at 289, 93 S.Ct. at 574. Despite the uncertainty of whether Ricci could obtain administrative adjudication of his complaint, the Court held that the Commission must make the first determination of whether valid regulations had been violated:

> That issue [of whether the transfer of Ricci's membership was in violation of the Act for failure to follow exchange rules] in turn appears to pose issues of fact, and questions about the scope, meaning and significance of exchange membership rules. These are matters that should be dealt with in the first instance by those especially familiar with the customs and practices of the industry and the unique marketplace involved in this case. They are matters typically lying at the heart of an administrative agency's task and here they appear to be matters which Congress has placed within the jurisdiction of the Commodities Exchange Commission.

409 U.S. at 304, 93 S.Ct. at 582 (footnote and citations omitted). Appellants have argued that this language mandates deference of the issues in these cases to the Commission also.[2]

In *Ricci,* however, the trial judge had no occasion to pass upon the question of whether the issues involved required deference to the Commission. But both the Court of Appeals and Supreme Court

---

2. A statutory argument supporting deference can also be made. The Commodities Exchange Act currently contains three means of punishing price manipulation and other violations: *suspension of a commodities exchange or member from trading* (7 U.S.C. §§ 8 and 9), the issuance of cease and desist orders (§§ 13a and 13b), and the imposition of criminal penalties (§ 13; but see also § 13c(b)). Each statutory penalty requires some determination by the Secretary that a violation of the Act has been committed before court action to enforce the penalty is allowed. Hearings are guaranteed before suspensions or the issuance of cease and desist orders; and the Secretary can refuse to refer any suspected violation for criminal prosecution if criminal sanctions would not be in the public interest. Here, however, plaintiffs are trying to impose a fourth penalty—monetary damages— which will not be subject to prior determination by the Secretary that a violation has occurred or that the imposition of a penalty would serve the public interest.

opinions recognized that the very nature of the Commodities Act required that each exchange have a membership organization and criteria for the acquisition, transfer and loss of membership. 409 U.S. at 308, 93 S.Ct. at 581. Even though the factual issues of the case were quite simple and could have been easily disposed of in a civil proceeding,[3] International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 238–239, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), these opinions recognized that the Commission could articulate the ways in which an exchange could validly exercise its inherent power over membership,[4] and that this articulation would hopefully dispose of a preliminary issue in the task of reconciling the antitrust laws with the Commodities Exchange · Act. Since the Exchange Act does not in any way give a commodities exchange or the Commission power to sanction price manipulation, and since, for reasons to be discussed below, deference to administrative expertise is not vital for defining the scope of the regulations governing the issues raised by the complaints, I do not believe that *Ricci* compels deference to administrative primary jurisdiction in these cases.

Courts have usually invoked the doctrine of primary jurisdiction where they have determined that the issues raised are within the unique expertise of administrative agencies, where the issues involve administrative discretion, and where the desire for uniformity would be frustrated by many courts reaching inconsistent decisions. United States v. Philadelphia National Bank, 374 U.S. 321, 353, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). Accordingly, a trial court asked to defer action on a matter arguably within administrative jurisdiction should consider these factors and examine the particular issues raised by the pleadings, the contribution that an administrative adjudication can make, and the effect that deferring the litigation will have upon the litigants involved. Ricci v. Chicago Mercantile Exchange, 409 U.S. at 308, 93 S.Ct. at 584 (Marshall, J., dissenting).

The complaint in Deaktor v. L. D. Schreiber & Co. et al., a class action on behalf of all traders allegedly harmed because of artificially inflated prices, alleges that the defendants exceeded daily trading limits, held or controlled net "long" positions in excess of position limits, and were responsible for manipulation of the prices of pork belly futures for July, 1970. The complaint further alleges that the Chicago Mercantile Exchange was or should have been aware of the manipulative activities and that it failed to act promptly to halt these violations of Exchange rules. All defendants' answers denied these allegations. From the complaints and arguments on appeal, it appears that the essential issues which must be adjudicated are whether the Commission had set quantitative limits for trading pork belly futures, whether the defendants exceeded these limits, whether the defendants' conduct caused unreasonable price fluctuations, and whether the exchange knew or should have known about the conduct of the defendants and should have acted to stop it. I do not think

---

3. Some of the factual issues which the Court identified for deference to the Commission were the questions whether Ricci's membership had been transferred to another before Ricci had revoked a transfer authorization; whether the transfer authorization was valid; whether the party who ordered the transfer had the power to do so; and whether the party ordering the transfer was indebted to Ricci. All these issues appear to be simple questions of fact. 409 U.S. at 305 n. 15, 93 S.Ct. at 582 n. 15.

4. An examination of the exchange rules which the Court of Appeals found relevant indicates that they had little relevance to the factual questions involved. My suspicion is that the Court believed deference would allow the Commission to determine whether any unwritten rules sanctioned or prohibited the membership transfer. 409 U.S. at 299 n. 11, 93 S.Ct. at 579 n. 11.

that the district court abused its discretion in determining that these issues do not require the application of administrative expertise, for they involve factual determinations within the traditional competence of juries.

The complaint in Phillips v. Chicago Mercantile Exchange, a class action brought on behalf of all traders who lost money on fresh eggs futures contracts allegedly because of the defendants' conduct, alleges that defendants violated both the antitrust laws and the Commodities Exchange Act by artificially depressing the price of egg futures for their own advantage. The complaint alleges that the defendants, acting through the Business Conduct Committee of the Chicago Mercantile Exchange, ordered parties holding contracts to buy fresh eggs to liquidate 50% of these contracts without giving these parties a hearing and without giving the liquidation order proper dissemination. As a consequence, the price of eggs was driven downward to enable the defendants to purchase sufficient egg contracts to extricate themselves from the economically undesirable position they were in before their illegal activity. The complaint further alleges that the defendants' activity was in violation of rules of the Chicago exchange relating to hearings and emergency action, constituted manipulation and the circulation of false information as prohibited by the Act, and was an illegal conspiracy in restraint of trade. The defendants have denied all these allegations. Thus, the key issues are whether the defendants had the conspiratorial purpose alleged, whether they acted in the way alleged, and whether the harmful effects flowed from their action. Once again, I do not believe that the trial judge abused his discretion in finding these issues within the competence of his court.[5]

Given the unobtrusive nature of the facts at issue in these cases, I doubt whether deference to the Commission would add substantially to their resolution. These facts do not involve a pervasive regulatory scheme, United States v. Radio Corporation of America, 358 U.S. 334, 350, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959), or matters within administrative discretion, Great Northern Ry. v. Merchants' Elevator Co., 259 U.S. 285, 294, 42 S.Ct. 477, 66 L.Ed. 943 (1922), but rather a unique set of facts concerning situations which may never be repeated. The main issue common to all these appeals—i. e., whether a manipulation of prices occurred—is one which the judiciary has considered itself just as competent as the Commodities Exchange Commission to pass upon. Since the term "manipulation" is undefined in the Act, courts of appeal have given it meaning in the cases taken on direct appeal from Commission determinations. Volkart Brothers Inc. v. Freeman, 311 F.2d 52, 58 (5th Cir. 1962), General Foods Corp. v. Brannan, 170 F.2d 220, 223–224 (7th Cir. 1948). Although commentators have argued that the judicial interpretation of "manipulation" has varied from circuit to circuit, Congress has declined to substitute a statutory definition of that term for the sake of uniformity. Vogelson, Tightened Regulation for Commodity Exchanges, 55 A.B.A.J. 858, 860 (1969).[6] In short, it

5. It is also questionable whether the Commodities Exchange Commission could even take jurisdiction over the issues pertaining to whether the defendants violated the rules governing hearings and emergency action. Congress, in giving the Commission power to force exchanges to police violations of their own rules, plainly indicated that this power would not extend to the enforcement of rules and regulations "such as those governing the organization and government of the exchange. . . ." S.Rep. No. 947, 90th Cong., 2d Sess., U.S.Code Cong. & Admin. News, pp. 1673, 1681 (1968).

6. It should be noted also that a court of appeals reviewing any administrative determinations under the Commodities Act can set them aside if they are unsupported by the weight of the evidence. 7 U.S.C. §§ 8, 9, 13a, and 13b. This stand-

is doubtful that deference can add much to the work of a court and jury in resolving the issues concerning manipulation in the instant cases; nor does it appear that Congress regards uniformity as a compelling consideration.

Finally, the interest of the plaintiffs in these cases should be considered. Any deference to administrative primary jurisdiction and subsequent appeals from administrative decisions before a district court adjudication of their complaints will increase costs, delay redress of any wrongs, and act to deter litigation. I also perceive several knotty problems involved in allowing an administrative agency to decide issues which are at the heart of a judicial proceeding. Assuming for the moment that a tort action for interference with one's trade was cognizable at common law, plaintiffs are entitled to a trial of their actions by a jury in the district court. See, Fleitmann v. Welsbach Street Lighting Co., 240 U.S. 27, 36 S.Ct. 233, 60 L. Ed. 505 (1916), 5 Moore's Federal Practice ¶ 38.19 (2d Ed. 1971). I seriously question whether a prior administrative determination of matters at the heart of a lawsuit could subsequently bind a court, for then the administrative proceeding would amount to a deprivation of plaintiff's Seventh Amendment rights. If the administrative adjudication were not binding, I doubt whether it could be brought to the attention of the jury in the subsequent court proceeding, for it may be inadmissible as infringing upon the province of the jury. Refusal to defer, of course, would avoid these problems.

I find that the trial judge did not abuse his discretion in refusing to defer to the Commission in these cases, given the facts at issue and the particular regulations involved. I concur in the result.

ard of review has been likened to a *de novo* determination, with proper regard to the credibility determinations of the trier of fact. Great Western Food Distributors v. Brannan, 201 F.2d 476, 479 (7th Cir. 1953). Surely if Congress were interested in promoting uniformity under the Act, it would have provided for a more stringent standard of review.