**Paul LIANG et al., Plaintiffs,**

v.

**Nelson Bunker HUNT et al., Defendants.**

No. 77 C 2368.

United States District Court,
N. D. Illinois, E. D.

June 29, 1979.

Aaron M. Fine, of Fine, Kaplan & Black, Philadelphia, Pa., Melvyn Weiss, David J. Bershad, A. Arnold Gershon, of Milbert & Weiss, New York City, Lawrence Walner, Lawrence Walner & Associates, Ltd., Chicago, Ill., Lowell E. Sachnoff, Dean A. Dickie, Anthony S. DiVincenzo, Sachnoff, Schrager, Jones, Weaver & Rubenstein, Ltd., Chicago, Ill., for plaintiffs.

John V. Ryan, III, Michael D. Freeborn, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., Robert B. Cousins, Jr., Shank, Irwin, Conant, Williamson & Grevelle, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

This action concerns the purchase of soybean futures contracts by defendants, seven members of the family of H. L. Hunt and a family corporation. On September 24, 1977, Judge McGarr issued a memorandum opinion in *Commodity Futures Trading Comm. v. Hunt*, No. 77 C 1489 (N.D.Ill.1977) ("*CFTC v. Hunt*"), finding that defendants had violated Section 4a(1) of the Commodity Exchange Act, 7 U.S.C. § 6a(1), and Regulation 150.4 promulgated thereunder by holding a speculative long position in soybean contracts in excess of the stated limits. The Court of Appeals for the Seventh Circuit affirmed Judge McGarr's order on this ground, while remanding for further proceedings. *CFTC v. Hunt*, 591 F.2d 1211 (7th Cir. 1979).

Plaintiffs are short sellers of soybean futures contracts who allegedly offset their

positions by purchasing soybean contracts during the period defendants held contracts in excess of the speculative limits. They claim that defendants' conduct caused a rise in the price of soybean futures contracts during the period in which plaintiffs made their purchases.

Plaintiffs' complaint consists of four counts.[1] Count I alleges a violation of the speculative limits, 7 U.S.C. § 6a(1). Count II alleges a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Counts III and IV allege violations of 7 U.S.C. § 13(b) for manipulation of the price of soybean futures contracts. The action is before the court on defendants' motion for summary judgment and plaintiffs' motion for class certification.

## I. *Private Rights of Action Under the Commodities Laws.*

The first issue before the court is whether there is a private right of action under either the excessive speculation provisions, 7 U.S.C. § 6a(1), or the price manipulation provision, 7 U.S.C. § 13(b), of the commodities laws. No private right of action is expressed. The parties have not cited and the court has not found any case deciding whether a private right of action exists under the excessive speculation provision.[2] At least one case has held that a private right of action exists under the price manipulation provision.[3] Other courts have found a private right of action under the fraud provisions of the statute.[4]

Whether a private right of action should be implied under either of these provisions depends on an analysis of the factors set

out in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" (Citations omitted; emphasis in original.)

Each of the *Cort* factors will be separately considered.

### A. *The Excessive Speculation Provision.*

#### 1. *Especial Benefit.*

The first *Cort* factor is whether plaintiffs are of the class of persons for whose *especial* benefit the statute was enacted. The court believes that the answer to this question must depend, in large part, on the language of the statute, itself. *See Cannon v. University of Chicago*, —— U.S. ——, ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Touche Ross & Co. v. Redington*, —— U.S. ——, ——————, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). The purpose of the excessive speculation provision is set out in the statute:

---

1. Plaintiffs have stated their intention to discontinue Count V of their complaint, a claim under state law.

2. The parties and the court agree that a private right of action may be implied from one section of the commodities laws while being denied from another section. For example, though private rights of action have been implied under various provisions of the securities laws, the Supreme Court has held that no private right of action exists under § 17(a) of the Securities Exchange Act of 1934. *Touche Ross & Co. v. Redington*, —— U.S. ——, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Therefore, the court

must look at the specific provision from which plaintiffs seek to imply a private right of action.

3. *Deaktor v. L. D. Schreiber & Co.*, 479 F.2d 529 (7th Cir.), *rev'd on other grounds sub nom.*, *Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973).

4. *See e. g., Smith v. Groover*, 468 F.Supp. 105 (N.D.Ill.1979) (Grady, J.); *Hofmayer v. Dean Witter & Co.*, 459 F.Supp. 733 (N.D.Cal.1978). *But see Consolo v. Hornblower & Weeks-Hemphill, Noyes, Inc.*, 436 F.Supp. 447 (D.Ohio 1976).

"Excessive speculation in any commodity under contracts of sale of such commodity for future delivery made on or subject to the rules of contract markets causing sudden or unreasonable fluctuations or unwarranted changes in the price of *such commodity*, is an undue and unnecessary burden on interstate commerce in such commodity." 7 U.S.C. § 6a(1). (Emphasis added.)

The statute provides for the setting of speculative limits to eliminate this burden.

The language of the statute evidences a concern with the price of the commodity itself and, therefore, a concern for the producer and consumer of the commodity. Excessive speculation causes distortions in the price of the commodity. The speculative limits, by maintaining an orderly market, prevent price distortions. While investors may indirectly benefit from an orderly market, the primary intended beneficiaries of the statute are the producers and consumers.

This conclusion is supported by Regulation 150.4, which sets the speculative limits under the statute. Persons holding short positions are not the especial beneficiaries of the regulation which imposes speculative limits on them as well as persons holding long positions. Thus, Regulation 150.4 supports the court's conclusion that the excessive speculation provision is primarily intended to protect outsiders from the activity of all speculators, not speculators from each other. *See Piper v. Chris-Craft Industries*, 430 U.S. 1, 26–37, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

Therefore, the court concludes that the excessive speculation provision was not enacted for the especial benefit of plaintiffs in this case.

### 2. *Legislative Intent.*

The second *Cort* factor requires the court to construe the legislative intent underlying the statute to determine whether a remedy should be implied. Where, as here, the court has determined that plaintiffs are not members of a class for whose especial benefit the statute was enacted, some proof of an intention to create a private right of action must be evidenced. *Cort, supra* 422 U.S. at 82, 95 S.Ct. 2080.[5] As noted in *Piper, supra* 430 U.S. at 26, 97 S.Ct. at 941, "[r]eliance on legislative history in divining the intent of Congress is . . . a step to be taken cautiously."

The excessive speculation provision was originally enacted as part of the Commodity Exchange Act of 1936. The purpose of the Act, as a whole, was stated in a House Report:

"The fundamental purpose of the measure is to insure fair practice and honest dealing on the commodity exchanges and to provide a measure of control over those forms of speculative activity which too often demoralize the markets to the injury of producers and consumers and the exchanges themselves. The bill has as another objective the restoration of the primary function of the exchanges which is to furnish a market for the commodities themselves." H.R.Rep. No. 421, 74th Cong., 1st Sess. (1935).

*See also* S.Rep. 93–1131, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 5843, 5844.

The legislative history provides no mention of any remedy nor any intent to benefit speculators. In fact, the Senate and House Committee hearings on the bill indicate that the intended beneficiaries of the speculative limits were the producers of the commodities, not speculative traders in futures contracts.[6]

Finally, plaintiffs have cited language from the legislative history of the Commodity Futures Trading Act of 1974 indicating that Congress was concerned with the indi-

---

5. Of course, even if the statute is enacted for the especial benefit of a class, "an explicit purpose to *deny* such cause of action would be controlling." *Cort, supra, 422* U.S. at 82, 95 S.Ct. at 2090, *cited in, Cannon, supra,* —— U.S. at ——, 99 S.Ct. 1946.

6. In testimony before both committees, it appears that the commodities exchanges opposed the speculative limits.

vidual trader. However, the court notes that the 1974 Act made only minor changes in the excessive speculation provision. The 1974 Act increased protection for the individual trader by creating the Commodity Futures Trading Commission, not by changing the excessive speculation provision.

Plaintiffs also argue that Congress, in 1974, was aware that courts had been implying rights of action under the commodities laws and, therefore, implicitly approved of these decisions by not expressly limiting them. On the other hand, defendant points out that Congress rejected proposals creating a private right of action. Neither of these contentions is conclusive. Moreover, the court notes that these pre-1974 decisions found implied rights of action under the fraud provisions of the commodities laws, not the excessive speculation provision.[7] *See, e. g., Goodman v. H. Hentz & Co.*, 265 F.Supp. 440 (N.D.Ill.1967).

Accordingly, the court concludes that plaintiffs have not demonstrated any Congressional intent to create a private right of action under the excessive speculation provisions.

### 3. The Legislative Scheme.

The third *Cort* factor is whether it is "consistent with the underlying purposes of the legislative scheme to imply [a private right of action in favor of] plaintiff."

As discussed above, the purpose of the excessive speculation provision is to regulate the markets and prevent price distortions in commodities. Thus, the speculative limits act, in part, as a means of foreclosing price manipulation, even before any damage occurs. As such, the speculative limits are best enforced by the CFTC. While actions by individual plaintiffs may expose violations of the speculative limits, only the CFTC can effectively supervise the market.[8] Thus, while a private remedy would not necessarily frustrate the underlying purpose of the legislative scheme, *see Cannon, supra* —— U.S. at ——, 99 S.Ct. 1946, the court concludes that it would, at best, have only an incidental effect on enforcing the provision.

### 4. State Law.

The final *Cort* factor questions whether the remedy sought is one traditionally relegated to state law. The court concedes that plaintiffs' complaint does not raise matters traditionally relegated to state law. However, the court's analysis of the other *Cort* factors leads it to conclude that there is no private right of action under the excessive speculation provision, Section 4a(1) of the Commodity Exchange Act, 7 U.S.C. § 6a(1).

Accordingly, defendants' motion for summary judgment on Count I of plaintiffs' complaint is granted and Count I is hereby dismissed.

### B. Price Manipulation.

The analysis of the excessive speculation provision under the *Cort* factors applies with equal force to the price manipulation provision, 7 U.S.C. § 13(b).

First, there is nothing in the language of the price manipulation provision which indicates that it was enacted for the especial benefit of the class of persons including plaintiffs. It states:

> "It shall be a felony . . . for any person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any contract market, or to corner or attempt to corner any such commodity . . ."

**7.** The court recognizes that *Deaktor, supra*, was decided prior to the enactment of the 1974 law and that it dealt with price manipulation, not fraud per se.

**8.** Further, in *CFTC v. Hunt, supra*, 591 F.2d at 1221–1223, the Seventh Circuit stated that the CFTC may seek an order requiring defendants to disgorge any profits illegally made. Therefore, monetary, as well as injunctive and criminal, relief is available to the CFTC. The court also notes that, if disgorgement is ordered, the funds may be returned to injured traders, such as plaintiffs in this case. The court recognizes that such a remedy would not provide plaintiffs with the breadth of relief they seek.

The provision is enforceable by criminal prosecution or proceedings before the CFTC, 7 U.S.C. § 13(b). Thus, the price manipulation provision is a general criminal statute for the benefit of the public at large. The Supreme Court "has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large." *Cannon, supra* at —— n. 13, 99 S.Ct. at 1955 n. 13; *Cort, supra* 422 U.S. at 78–80, 95 S.Ct. 2080.

Second, in analyzing the legislative history of the price manipulation provision, the court recognizes that it, like the excessive speculation provision, was enacted as part of the Commodity Exchange Act. As noted above, the Commodity Exchange Act was a statute more concerned with producers and consumers than investors. The price manipulation provision was not changed by the Commodity Futures Trading Commission Act of 1974. The legislative history of neither Act indicates an intent to create a private right of action.

Third, as with the excessive speculation provision, the court concludes that a private right of action would have only an incidental effect on the enforcement of the purposes of the price manipulation provision. Both provisions attempt to deal with market injury. The excessive speculation provision attempts to prevent such injury before it occurs. The CFTC is properly entrusted with supervising the market.

Further, a private right of action under the price manipulation provision would expose a defendant to widespread liability, far in excess of any illegal profits the defendant might make. In the absence of any Congressional directive, the court concludes that a private right of action would be inconsistent with the legislative scheme.[9]

Two points remain. First, prior to *Cort, supra*, the Seventh Circuit decided *Deaktor v. L. D. Schreiber & Co.*, 479 F.2d 529 (7th Cir.), *rev'd on other grounds sub nom., Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973). In *Deaktor*, a trader brought an action alleging that certain members of the exchange had manipulated the frozen pork bellies futures contracts market. The plaintiff also alleged that the exchange, itself, was liable for failure to halt this activity. The Seventh Circuit found an implied right of action under the price manipulation provision stating that "the enactment is *at least in part* intended to protect the interests of the plaintiff-traders in these actions." 479 F.2d at 534 (emphasis added). This court concludes that the first *Cort* factor requiring the statute to be for the *especial* benefit of plaintiffs and subsequent cases expressing reluctance to imply rights of action from general criminal statutes undermine the conclusion of the Seventh Circuit in *Deaktor*.

The court has also been directed to a decision of Judge Grady in *Smith v. Groover*, 468 F.Supp. 105 (N.D.Ill.1979). While the facts of the case are not entirely clear from the opinion, Count I of the plaintiffs' complaint alleged that defendants "bucketed" orders and, thereby, manipulated the price of soybean futures contracts. Judge Grady, in a thorough opinion, found an implied right of action under the commodities laws. While Judge Grady found that the commodities laws were enacted for the especial benefit of the plaintiffs, he did not analyze each provision individually. As noted in *Cannon, supra* —— U.S. at ——, 99 S.Ct. at 1953, the question of especial benefit "is answered by looking to the language of the statute itself." Thus, this court has determined that the excessive speculation and price manipulation provisions were not enacted for the especial benefit of plaintiffs in this case. Moreover, while Judge Grady raises the price manipulation provision, the thrust of the complaint in *Smith v. Groover, supra*, appears to allege "bucketing", a practice prohibited by the fraud provisions of the Act, 7 U.S.C. § 6b.

---

**9.** The court notes that under Section 9 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78i, Congress has *expressly* provided a private right of action for price manipulation on the exchanges.

896

This brings the court to the second point. The vast majority of the cases which have found an implied right of action under the commodities laws have done so under the fraud provisions.[10] While the court need not decide whether a private right of action exists under the fraud provisions, it is helpful to look to those provisions to distinguish the excessive speculation and price manipulation provisions. The fraud provisions generally guard against injury imposed by one person in transactions with another. As such, the fraud provisions identify the commodities customer as the protected person. This is distinguished from the excessive speculation and price manipulation provisions which deal generally with injury to the market. No particular protected group is identified. As noted above, this distinction is not only independently important, but becomes important in analyzing the legislative history. As the Supreme Court stated in *Cort, supra* 422 U.S. at 82, 95 S.Ct. at 2090, *cited in Cannon, supra* —— U.S. at ——, 99 S.Ct. 1946, where "federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action." (Emphasis in original.)[11] Such is not the case with respect to the excessive speculation and price manipulation provisions and the court has found no legislative intent to create a private right of action under their terms. Thus, even if there is a private right of action under the fraud provisions, the court concludes that there is no private right of action under the price manipulation provision.

Finally, the court notes the "stricter standard for the implication of private causes of action" adopted in recent Supreme Court decisions. *Touche Ross, supra* —— U.S. at ——, 99 S.Ct. at 2490. As the Court stated:

"The ultimate question is one of Congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law."

Accordingly, defendants' motion for summary judgment on Counts III and IV of plaintiffs' complaint is granted, and Counts III and IV are hereby dismissed.

II. *The Antitrust Laws.*

Since plaintiffs do not have a remedy under the commodities laws, the court need not consider whether its decision in *Schaefer v. First National Bank of Lincolnwood,* 326 F.Supp. 1186 (N.D.Ill.1970), *aff'd,* 509 F.2d 1287 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976), precludes plaintiffs' claim under the antitrust laws contained in Count II. However, the court concludes that plaintiffs fail to state any claim under the antitrust laws.

Plaintiffs have failed to allege that they purchased soybean contracts directly from defendants. In fact, their complaint seeks relief for all persons who purchased soybean contracts during the relevant time period regardless of the source. Plaintiffs' theory is that the conduct of defendants had the effect of raising the price of soybean contracts throughout the market.

In *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the Supreme Court rejected the use of the offensive "passing-on" doctrine to establish a claim under the antitrust laws. Thus, only direct purchasers from the defendants stated a claim. The claims of persons who purchased from the direct purchasers did not state a claim. The Court reasoned that if "passing-on" was to be used offensively, it would also have to be available defensively. This, the Court felt, would deter the prosecution of antitrust claims and hopelessly complicate the already difficult problem of fixing damages.

10. *See,* n. 4, *supra.*

11. Therefore, the issue in many of the fraud cases is whether Congress intended to *deny* a private right of action by creating reparation proceedings before the CFTC, 7 U.S.C. § 18(e). *Compare e. g., Hofmayer, supra,* at 738 *with Bartels v. International Commodities Corp.,* 435 F.Supp. 865, 868 (D.Conn.1977).

The logic of the Court in *Illinois Brick* was extended in a recent decision of the Third Circuit in *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3d Cir. 1979). In *Mid-West*, certain plaintiffs brought an action against defendants who had allegedly fixed prices. The plaintiffs were not purchasers from the defendants but rather from the defendants' non-conspiring competitors. The plaintiffs claimed that the defendants' illegal conduct had the effect of raising prices throughout the market for the product and that, therefore, plaintiffs were injured by the higher prices charged by defendants' competitors. The court rejected plaintiffs' argument. The court's decision rested, in part, on the harshness of imposing liability on the defendants where they secured no benefit at the plaintiffs' expense and the difficulty in determining the extent to which the defendants' activities raised the prices charged by competitors. These considerations apply in the present case and mandate the same result. The existence of an exchange market only adds to these difficulties.[12]

Accordingly, defendants' motion for summary judgment on Count II of plaintiffs' complaint is granted, and Count II is hereby dismissed.

In sum, defendants' motion for summary judgment is granted. Plaintiffs' motion for class certification is denied.

**12.** The recent decision of the Supreme Court in *Reiter v. Sonotone Corp.*, —— U.S. ——, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), has no effect on this conclusion. The only issue before the court in *Reiter* was whether an action could be brought under Section 4 of the Clayton Act alleging noncommercial injury. The Court expressly stated that the direct purchaser rule of *Illinois Brick, supra,* was not in issue. —— U.S. at —— n. 3, 99 S.Ct. 2326.