Ray v. Deloitte & Touche, L.L.P., et al., 2006 NCBC 5.

NORTH CAROLINA                IN THE GENERAL COURT OF JUSTICE
                                      SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG               05 CVS 15862

|  |  |
|---|---|
| DELORES RAY, WILLIAM RAY, WILLIAM GORELICK, individually and on behalf of all other Limited Partners of Piedmont Venture Partners, L.P. and Piedmont Venture Partners II, L.P.,<br><br>             Plaintiffs,<br><br>    v.<br><br>DELOITTE & TOUCHE, L.L.P., a North Carolina Limited Liability Partnership; DELOITTE & TOUCHE USA L.L.P., a North Carolina Limited Liability Partnership; PIEDMONT VENTURE PARTNERS, L.P., a North Carolina Limited Partnership; and PIEDMONT VENTURE PARTNERS II, L.P., a Delaware Limited  Partnership,<br><br>            Defendants. |  |

## ORDER AND OPINION

{1}     The Court heard this matter on February 28, 2006, on Defendants' Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule 12(b)(6)").  For the reasons set forth below, and after considering the Complaint, the Motion, and counsel's memoranda and oral arguments, the Court **GRANTS** the Defendants' Motion to Dismiss on the grounds that Plaintiffs (1) failed to exhaust the "intracorporate" remedies available to them under the Funds' Partnership Agreements; and (2) failed to make demand on the proper partnership representative or otherwise explain why such a demand was impractical.  The Court concludes further that dismissal of the Complaint shall be *without prejudice* to Plaintiffs' ability to re-file this action upon compliance with the demand requirements imposed by Delaware and North Carolina law.

> *Law Office of Arcangela M. Mazzariello by Arcangela M. Mazzariello; The Jackson Law Group by Gary W. Jackson and Kurt F. Hausler; Maynard, Cooper & Gale, P.C. by Walker Percy Badham, III, Robert W. Tapscott, Jr., and Brannon J. Buck for Plaintiffs Delores Ray, William Ray, and William Gorelick, individually and on behalf of all other Limited Partners of Piedmont Venture Partners, L.P. and Piedmont Venture Partners II, L.P.*

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. by James T. Williams, Jim W. Phillips, Jr., Jennifer K. Van Zant, and Janice Kopec for Defendants Deloitte & Touche, L.L.P. and Deloitte & Touche USA L.L.P.*

> Diaz, Judge.

## I.
## PROCEDURAL BACKGROUND

{2}     Plaintiffs' Verified Derivative Complaint ("Complaint") was filed on August 29, 2005 in Mecklenburg County Superior Court.  The case was transferred to the North Carolina Business Court and assigned to me as a complex business matter by order of the Chief Justice of the North Carolina Supreme Court dated December 1, 2005.

{3}     Defendants filed a Motion to Dismiss on December 1, 2005, alleging (among other things) that Plaintiffs' claims should be dismissed for failure to make demand prior to filing the action.

## II.
## FACTUAL BACKGROUND
## A.
## THE PARTIES

{4}     Plaintiff Delores Ray is a Limited Partner in Piedmont Venture Partners, L.P. and Piedmont Venture Partners II, L.P.  (Compl. at ¶ 1.)  Plaintiff William Ray is a Limited Partner in Piedmont Venture Partners, L.P. and Piedmont Venture Partners II, L.P.  (Compl. at ¶ 2.)

{5}     Plaintiff William Gorelick is the Trustee of "IsraelGorelick Trust FBO William Gorelick," a North Carolina trust, which is a Limited Partner in both Funds.  (Compl. at ¶ 3.)  (Plaintiffs' Response in Opposition to Motion to Dismiss at 10.)

{6}     Defendants Deloitte & Touche USA L.L.P. and Deloitte & Touche L.L.P (collectively "Deloitte") are limited liability partnerships organized and existing under the laws of the state of North Carolina, with their principal place of business in Charlotte, Mecklenburg County, North Carolina.  Deloitte served as the independent auditor for Piedmont Venture Partners, L.P. and Piedmont Venture Partners II, L.P. from 1999 until 2001, when it withdrew from the annual audit.  (Compl. at ¶ 5.)

{7}     Nominal Defendant Piedmont Venture Partners, L.P. ("Fund I"), a North Carolina limited partnership, was organized on December 30, 1996 and operated pursuant to the Fund I Partnership Agreement.  (Compl. at ¶¶ 6, 26.)

{8} Nominal Defendant Piedmont Venture Partners II, L.P. ("Fund II"), a Delaware limited partnership, was organized on November 16, 1998 and operated pursuant to the Fund II Partnership Agreement.[1] (Compl. at ¶¶ 7, 26.) Fund I and Fund II are collectively referred to hereinafter as the "Funds," unless referred to individually. The Fund I Partnership Agreement and the Fund II Partnership Agreement are collectively referred to hereinafter as the "Partnership Agreements," unless referred to individually.

{9} The Funds were organized for the purpose of making venture capital investments. (Compl. at ¶ 25.)

{10} The Funds were managed by a General Partner. Piedmont Venture Management, Inc. ("PVM") served as the General Partner for Fund I. (Compl. at ¶ 9.) Piedmont Venture Capital Management, L.L.C. ("PVCM") served as the General Partner for Fund II. (Compl. at ¶ 10.) PVM and PVCM are collectively referred to hereinafter as the "General Partners," unless referred to individually.

{11} Stacy E. Anderson ("Anderson") and William W. Neal ("Neal") were, at all relevant times, the managing principals of PVM and PVCM. (Compl. at ¶¶ 11-12.) The Complaint uses the term "Management" to refer to PVM, PVCM, Anderson, and Neal collectively. (Compl. at ¶ 12.)

## B.
## OVERVIEW OF THE FACTS

{12} Plaintiffs allege the following facts which, for purposes of the Motion to Dismiss, will be treated as true.

{13} Plaintiffs seek to pursue derivative claims on behalf of the Funds against Deloitte for its acts and/or omissions while serving as the independent auditor for the Funds. Generally stated, Plaintiffs allege that "Deloitte failed to communicate to the Plaintiffs, among other things, the widespread malfeasance and acts of self-dealing being committed by the Funds' Management despite being on notice of and/or having actual knowledge of such." (Compl. at ¶ 15.)

{14} The Plaintiffs, along with approximately one hundred and sixty other qualified individual and institutional investors, invested a total of more than $45,000,000 in the Funds. (Compl. at ¶¶ 27, 29.)

{15} Plaintiffs allege that Management retained Deloitte, as an independent auditor, during the years 1999, 2000 and 2001, "to provide the Plaintiffs with audited financial statements."[2] (Compl. at ¶ 30.) Plaintiffs further allege that Deloitte performed the auditing services annually until it withdrew during the 2001 audit. (Compl. at ¶ 36.)

{16} With respect to Deloitte's alleged wrongdoing, Plaintiffs allege that "Deloitte became aware of Management's malfeasance[,]" but "never brought this information to the Limited Partners' attention." (Compl. at ¶ 38.) Plaintiffs further allege that "Deloitte also discovered . . . that the information and/or assumptions underlying the Funds' 1999 and 2000 financial statements were erroneous. Despite this knowledge, Deloitte failed to take any action to correct the errors in these financial reports."[3] (Compl. at ¶ 39.)

{17} Plaintiffs concede in the Complaint that they made no demand on the Funds prior to filing this action. (Compl. at ¶ 21.) Instead, Plaintiffs allege that making such a demand would have been futile because the General Partners were themselves engaged in the malfeasance described in the Complaint.[4] (Compl. at ¶¶ 21-24.)

{18} On May 27, 2005, three (3) months before this action was filed, the General Partners of Fund I and Fund II, PVM and PVCM respectively, filed Chapter 7 petitions for bankruptcy in the U.S. Bankruptcy Court for the Western District of North Carolina.[5]

{19} The Partnership Agreements of both Funds specifically set forth what is to occur in the event of a bankruptcy filing by the General Partner. Section 5.2 of the Fund I Agreement establishes that if the General Partner becomes bankrupt, "its successor shall be chosen as set forth in Section 10.1(a)(iv)." Fund I Agreement § 5.2. Under Section 10.1(a)(iv), a two-thirds majority of the Limited Partners have ninety (90) days to agree to continue the Fund and to elect a new General Partner. Fund I Agreement § 10.1(a)(iv). If after ninety (90) days the Limited Partners have failed to do so, the Agreement provides for the Limited Partners to elect a Liquidator to dissolve and wind up the affairs of the Fund. Fund I Agreement, § 10.1(c).

{20} The Fund II Agreement lays out a similar procedure. Specifically, Section 14.2 provides that "[t]he Partnership shall be dissolved" upon the bankruptcy of a General Partner. Fund II Agreement § 14.2; Del. Code Ann. tit. 6, § 17-402(a). In the event that there is no General Partner at dissolution (as was the case here), the Agreement provides that "a Limited Partner Majority may designate one or more persons to act as the Liquidator" to wind up the partnership's affairs. Fund II Agreement § 14.5. Section 14.5 provides further that "[a]ny such Liquidator which is not the General Partner shall be a 'liquidating trustee[.]'" Fund II Agreement § 14.5; Del. Code Ann. tit. 6, § 17-101(10).

{21} The Plaintiffs do not allege in the Complaint that they attempted to comply with the Partnership Agreements by appointing a new General Partner or a Liquidator following the bankruptcy of the Funds' General Partners.

## III.
## APPLICABLE LEGAL STANDARD

{22} The essential question on a motion to dismiss pursuant to Rule 12(b)(6) "'is whether the complaint, when liberally construed, states a claim upon which relief can be granted on *any* theory.'" *Oberlin Capital, L.P. v. Slavin,* 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001) (citation omitted) (emphasis in original). On a motion to dismiss, the complaint's material factual allegations are taken as true. *Id.* (citing *Hyde v. Abbott Lab.,* 123 N.C. App. 572, 575, 473 S.E.2d 680, 682 (1996)).

{23} Defendants argue first that the Complaint should be dismissed because Plaintiffs have failed to adequately plead demand futility. Second, Defendants argue that Plaintiffs have failed to allege sufficient facts to establish any claims by the Funds against the Defendants. Third, Defendants assert that the derivative claims are barred because of the wrongdoing or contributory negligence of the Funds' General Partners. Because I find that Plaintiffs have failed to adequately plead demand futility, the Court does not reach the Defendants' other arguments.[6]

## IV.

## CONCLUSIONS OF LAW

### A.

### THE NATURE OF DERIVATIVE ACTIONS AND CHOICE OF LAW

{24}    A derivative action "permits an individual shareholder to bring 'suit to enforce a *corporate* cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95, 114 L. Ed. 2d 152, 163 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534, 24 L. Ed. 2d 729, 734 (1970)). The underlying theory of a derivative action is that of redressing a wrong to the corporation and not to the shareholder individually. Thus, any harm suffered must be to the corporation, and all recovery, including damages, belongs to the corporation. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 396, 405, 537 S.E.2d 248, 254, 259 (2000). Accordingly, the decision to bring a derivative suit "generally lies within the judgment and control of management." *Alford v. Shaw*, 318 N.C. 289, 301, 349 S.E.2d 41, 48 (1986) (citation omitted).

{25}    Both the North Carolina Revised Uniform Limited Partnership Act and the Delaware Uniform Limited Partnership Act (hereinafter collectively "the Acts") provide that a limited partner may bring a derivative action on behalf of a limited partnership to seek relief for harm suffered by the partnership. *See* N.C. Gen. Stat. § 59-1001; Del. Code Ann. tit. 6, § 17-1001; *see also Cabaniss v. Deutsche Bank Secs., Inc.*, 170 N.C. App. 180, 182-83, 611 S.E.2d 878, 880-81 (2005), *disc. rev. denied*, 359 N.C. 850 (2005), *cert. denied*, 360 N.C. 61, 621 S.E.2d 176 (2005).

{26}    The laws of the state where the limited partnership was organized control for the purpose of determining whether the requirements for bringing a derivative action have been satisfied. N.C. Gen. Stat. § 59-901; Del. Code Ann. tit. 6, § 17-901. Accordingly, Fund I, a North Carolina limited liability partnership, is governed by North Carolina law, and Fund II, a Delaware limited liability partnership, is governed by Delaware law.

### B.

### THE DEMAND REQUIREMENT

{27}    Defendants' Motion to Dismiss seeks dismissal primarily on the grounds that Plaintiffs failed to make a pre-suit demand on the Funds' General Partners or, in the alternative, demonstrate that such demand should be excused. Plaintiffs counter that demand should be excused in this case because demand on the General Partners would have been futile.

{28}    Under North Carolina and Delaware law, a plaintiff is required to make a "demand" on the general partner prior to bringing a derivative action on behalf of a limited partnership, unless such demand would be futile. Specifically, the Acts provide that a limited partner may file a derivative action if the "general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed." N.C. Gen. Stat. § 59-1001; *see* Del. Code Ann. tit. 6, § 17-1001 (using almost identical language); *see also Cabaniss*, 170 N.C. App. at 183, 611 S.E.2d at 881 ("Under Delaware law, a plaintiff may not bring a derivative claim in the right of a limited partnership unless the general partner has refused to do so, or any demand that the general partner do so would be futile.").

{29}    This Court recently discussed the demand requirement (in the corporate context) in *In re Pozen S'holders Litig.*, 2005 NCBC 7 (N.C. Super. Ct. Nov. 10, 2005). In *Pozen*, Judge Ben Tennille emphasized that "demand" is a prerequisite to a shareholder bringing suit on behalf of a corporation, noting that "states universally require shareholders to exhaust all intracorporate remedies before taking advantage of the derivative action and show that 'the corporation itself had refused to proceed after suitable demand.'" *See Pozen*, 2005 NCBC 7, at ¶ 42 (citing *Ross*, 396 U.S. at 534, 24 L. Ed. 2d at 734). Specifically, with respect to Delaware's demand requirement, Judge Tennille explained that "'the right of a stockholder to bring a derivative action does not come into being until he has made a demand on the corporation to institute such an action, such a demand has been refused, or until the plaintiff stockholder has demonstrated that such a demand would have been futile.'" *See Pozen*, 2005 NCBC 7, at ¶ 43 (quoting *Stepak v. Dean*, 434 A.2d 388, 390 (Del. Ch. 1981)).

{30}    In a derivative action, a plaintiff's failure to satisfy the statutory demand requirement is an insurmountable bar to recovery. *Allen v. Ferrera*, 141 N.C. App. 284, 287, 540 S.E.2d 761, 764 (2000); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 982 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004).

{31}    The purpose behind the statutory demand requirement is the same in both North Carolina and Delaware. North Carolina law requires plaintiffs "to pursue and exhaust intra-corporate remedies through demand on directors [to] assure corporate management the opportunity to pursue alternative remedies, thus avoiding unnecessary litigation." *See Alford*, 318 N.C. at 297, 349 S.E.2d at 46. Delaware's statutory demand requirement is based on the same principles:

> The demand requirement is premised on the idea that the decision of whether to bring a lawsuit is a business one that is properly in the hands of the corporation's directors, whose role it is to manage the business and affairs of the corporation. Its purpose is to ensure that the derivative action remains an exception to the general rule that the appropriate party to bring suit is the corporation acting through its directors.

*See Pozen*, 2005 NCBC 7, at ¶ 43 (internal citations and quotation marks omitted); *see also Cabaniss*, 170 N.C. App. at 183, 611 S.E.2d at 881 ("The purpose of this rule is to allow the general partner, on behalf of the limited partnership, 'the opportunity to rectify the alleged wrong without suit or to control any litigation brought for its benefit.'") (citation omitted).

{32}    To avoid dismissal of the complaint in a case where no pre-suit demand is made on the limited partnership, a plaintiff must allege in the complaint "with *particularity* the effort of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort." N.C. Gen. Stat. § 59-1003 (emphasis added); *see* Del. Code. Ann. tit. 6, § 17-1003 (using almost identical language). Thus, in a derivative action, the "'pleadings must comply with stringent requirements of factual particularity that differ substantially from [traditional pleading requirements. The demand requirement] is not satisfied by conclusory statements or mere notice pleading.'" *Pozen*, 2005 NCBC 7, at ¶ 45 (citations omitted). If a plaintiff fails to meet this heightened pleading requirement through particularized factual allegations in the complaint, then the complaint must be dismissed. *Id.* at ¶ 46 (citation omitted).

{33}    Plaintiffs here neither allege that they complied with the procedures set forth in the Partnership Agreements for electing a substitute General Partner or Liquidator, nor why compliance with those procedures was impractical. In fact, Plaintiffs' Complaint does not address these issues at all, focusing instead on the alleged malfeasance

of the Funds' former Management as the ground for bypassing the statutory demand requirement. For the reasons explained below, this omission is fatal to the Plaintiffs' ability to proceed with this action.

## C.
## BANKRUPTCY OF GENERAL PARTNERS

{34}    Both North Carolina and Delaware have statutory provisions that address the effect of a general partner's bankruptcy on the limited partnership. Specifically, the Acts provide that the bankruptcy of a general partner results in the dissolution and commencement of the winding up of the limited partnership's affairs. *See* N.C. Gen. Stat. §§ 59-402, 59-801, 59-803; Del. Code Ann. tit. 6, §§ 17-101(10), 17-402, 17-801, 17-803. The Delaware Uniform Limited Partnership Act provides that the limited partners may appoint a liquidator with specific powers, including the authority to bring suit on behalf of the partnership. Del. Code Ann. tit. 6, §§ 17-101(10), 17-402, 17-803.

{35}    Independent of these statutory provisions, the Partnership Agreements of both Funds (as previously discussed) provide a process for appointing a new General Partner, or a Liquidator, in the event of the General Partner's bankruptcy. The Fund I Agreement states that if the General Partner becomes bankrupt, the Limited Partners "shall" elect a new General Partner as provided in Section 10.1(a)(iv). Fund I Agreement §§ 5.2, 9.5, 10.1(a)(iv). The Fund I Agreement further provides that if the Limited Partners fail to elect a new General Partner, the Fund shall then be dissolved, in which case the Limited Partners shall elect a Liquidator to wind up the Fund's business and affairs. *Id.* §§ 10.1(a)(iv), 10.1(c), and 10.2. Similarly, the Fund II Agreement states that, in the event of the bankruptcy of the General Partner, a majority of the Limited Partners may designate a Liquidator, which shall be a "liquidating trustee" with the capacity to bring suit. Fund II Agreement §§ 14.2, 14.5; Del. Code Ann. tit. 6, §§ 17-101(10), 17-402.

{36}    In light of these provisions in the Partnership Agreements, the General Partners were removed from office when they filed for bankruptcy in May of 2005, three (3) months before this lawsuit was filed. Consequently, the General Partners lacked authority to consider the merits of this lawsuit. Thus, the Plaintiffs' argument that demand on the General Partners should be excused because such a demand was futile is factually incorrect as the General Partners were no longer the proper representatives of the Funds upon whom demand should have been made.

*See Johnson v. Arthur Espey, Shearson, Hammill & Co.*, 341 F. Supp. 764, 767 (S.D.N.Y. 1972) (recognizing that "[i]t is irrelevant that [plaintiff] has made informal demand on the former president and controlling director . . . since that man is no longer in a position to control [the corporation's] decision to bring suit").

{37}    For the reasons explained below, I conclude that the Plaintiffs—before bringing this derivative action—were required by law to do as the Partnership Agreements contemplated, that is, have the Limited Partners decide who would manage the Funds (whether as going concerns or in liquidation) and then make demand on that new management.

## D.
## EFFECT OF NON-COMPLIANCE WITH THE PARTNERSHIP AGREEMENTS

{38}    To date, neither the North Carolina nor the Delaware courts have addressed the scope of a plaintiff's duty to make a demand where the corporation (or as here, a limited partnership) on whose behalf the suit was brought was defunct or otherwise inoperative.

{39}    Several courts, however, have held that such allegations are insufficient to excuse demand on the other shareholders to pursue the suit. For example, in *Johnson v. Arthur Espey, Shearson, Hammill & Co.*, the corporate entity was essentially defunct with no managing body upon whom demand could have been made. *See Johnson*, 341 F. Supp. 764. In *Johnson*, as in this case, the issue was whether or not the shareholders had exhausted their intracorporate remedies prior to bringing the derivative action. *See id.* In dismissing the suit, the court concluded that the plaintiff's allegation—that there was no one upon whom demand could be made—was insufficient to excuse demand on the other shareholders. Instead, the court reasoned that:

> [s]ince a demand upon directors is an impossibility, plaintiff must call a shareholders' meeting and there seek action against defendant before he will be permitted to institute suit. Only when the shareholders refuse to take action can it be said that the corporate entity has breached its duty.

*Id.* at 767 (internal citations and quotation marks omitted); *see also Taylor v. Holmes*, 127 U.S. 489, 492, 32 L. Ed. 179, 180 (1888) (affirming dismissal of a derivative suit on the basis that "[n]o effort was made to call together the stockholders to take any action on the part of the company, or to elect other directors, or to obtain any united action in the assertion of the claims"); *Watts v. Vanderbilt*, 45 F.2d 968, 969 (2d Cir. 1930) (finding that a demand upon the shareholders to elect directors or other officers to pursue the derivative suit was a condition precedent to the plaintiffs' right to bring the action, even though there had not been a functioning board of directors for five (5) years, and that because no allegation was made explaining the plaintiff's failure to make such demand, the insufficiency of the complaint with regard to any attempt by the plaintiffs to obtain action by the shareholders justified dismissal of the action); *Pourroy v. Gardner*, 122 Cal. App. 521, 527-28, 10 P.2d 815, 817-18 (Cal. App. 1932) (affirming dismissal of a derivative suit brought on behalf of a bankrupt corporation on the grounds that plaintiffs failed to make a demand upon the officers or the trustee in bankruptcy to institute the action, and that the excuse for not making such a demand—that the alleged wrongdoing was not discovered until after the termination of the bankruptcy proceedings and that since that time there had been no officers or directors upon whom demand could have been made—was insufficient because the plaintiffs, as shareholders, had the authority to elect a board of directors and other officers to pursue the action).

{40}    In sum, these cases demonstrate that futility may not be assumed merely because there was no one upon whom demand could be made. As applied to this case, Plaintiffs must instead show why it was, in fact, impractical to comply with the procedures set out in the Partnership Agreements for appointing a successor General Partner or Liquidator.

{41}    Plaintiffs do not allege in their Complaint that they attempted to comply with the procedures set forth in the Partnership Agreements; rather, they assert futility merely on the basis that the former General Partners are not disinterested parties and therefore could not objectively evaluate the merits of the litigation. As previously noted, even if this is true, the General Partners' position vis-à-vis the litigation is irrelevant as they are no longer in a position to make decisions for the Funds.[7]

{42}    In their briefing papers, Plaintiffs now allege that the demand requirement should be excused because there was no one upon whom the Plaintiffs could make demand.  Even if I could properly consider a claim that appears nowhere on the face of the Plaintiffs' Complaint, the alleged futility is a result of Plaintiffs' failure to comply with the procedures set forth in the Partnership Agreements for appointing new management for the Funds.  If the process of calling a meeting of the Limited Partners pursuant to the Partnership Agreements presented some unusually onerous burden for the Plaintiffs, they were obligated to allege as much in their Complaint.  *See Johnson*, 341 F. Supp. at 767 (noting that "[w]hatever may be the practical difficulties of making demand on the shareholders in some situations, plaintiff here has not demonstrated that he could not easily attempt to call a shareholders meeting.").

{43}    Having failed to allege that demand was made on any current management of the Funds, or that it was impractical to elect a substitute General Partner or Liquidator to consider the merits of this litigation in the first instance, the Court concludes that Plaintiffs' Complaint should be dismissed.[8]

### E.
### DISMISSAL WITHOUT PREJUDICE

{44}    This Court recently applied Delaware law in the demand futility context to dismiss a shareholder derivative action with prejudice, stating that "it is well-settled under Delaware law that, as a general rule, a plaintiff should not be afforded the opportunity to amend the complaint where he or she fails to properly plead demand futility."  *See Pozen*, 2005 NCBC 7, at ¶ 82 n. 4 (quoting *White v. Panic*, 783 A.2d 543, 555 (Del. 2001) (noting that the rationale for this rule is to encourage plaintiffs "to investigate their claims before filing a complaint so that they have a basis at the outset to make particularized factual allegations in the complaint")).  *Accord Egelhof v. Szulik, et al.*, 2006 NCBC 4, at ¶ 68, n. 5 (N.C. Super. Ct. March 13, 2006).

{45}    Notwithstanding *Pozen*, I find that the proper remedy here (under both Delaware and North Carolina law) is dismissal *without prejudice*.  First, the present action is not a "typical" futility of demand case where the complaint is dismissed for the plaintiff's failure to plead facts with sufficient particularity due to an inadequate investigation before filing suit.  Rather, my decision to dismiss the Complaint is based on the Plaintiffs' failure to identify and then make a pre-suit demand on the proper representatives of the Funds.

{46}    Second, the present action involves an unusual set of facts.  Specifically, this case concerns two nonfunctioning entities with no leadership due to the bankruptcy of the managing bodies.  Moreover, the court in *Johnson*, under similar factual circumstances, dismissed the shareholder's derivative action without prejudice to allow the plaintiff to amend the complaint to demonstrate that he had exhausted all intracorporate remedies, or explain why such efforts would have been futile.  *See Johnson*, 341 F. Supp. at 767; *see also Watts*, 45 F.2d at 971 (affirming dismissal of the shareholders' derivative action without prejudice to a new action after plaintiffs "have exhausted their remedies through the corporation, or its liquidating trustees, or receiver").

{47}    Finally, contrary to the Defendants' contention, Plaintiffs may in fact be able to cure the statutory defects in their pleading.  In that regard, I do not read the Fund I Partnership Agreement as narrowly as do the Defendants.  In particular, even if (as Defendants contend), the ninety (90)-day window for appointment of a General Partner for Fund I has expired, the Limited Partners retain the right to appoint a Liquidator, who would be authorized to perform the duties of a General Partner, including responding to a demand from the Plaintiffs to pursue litigation on the Fund's behalf.

{48}    Accordingly, Plaintiffs shall have an opportunity to correct the defects in their pleading with respect to the demand requirement.

### CONCLUSION

{49}    Based upon the foregoing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Defendants' Motion to Dismiss is **GRANTED** and Plaintiffs' claims are dismissed ***without prejudice***.

This the 21st day of April, 2006.

---

[1]    Both Limited Partnership Agreements are cited in the Complaint and copies of the Agreements are attached to Defendants' Motion to Dismiss as Exhibits A & B. At the hearing on this Motion, Plaintiffs stated that they had no objection to the Court considering the Partnership Agreements.

[2]    A copy of the 2001 Engagement Letter is attached to Defendants' Motion to Dismiss as Exhibit C. At the hearing on the Motion, Plaintiffs stated that they had no objection to the Court considering the Engagement Letter.

[3]    Plaintiffs allege that Deloitte became aware of Management's malfeasance and the errors in the 1999 and 2000 financial statements, at the latest, in 2002 during its audit of the Funds' 2001 financial statements.  (Compl. at ¶¶ 38-39.)

[4]    Plaintiffs' allegations of malfeasance against the General Partners are set forth in paragraphs 33 and 34 of the Complaint. Plaintiffs allege that the General Partners' malfeasance caused the Funds' investment capital to be "reduced from $45,000,000 to almost nothing."  (Compl. at ¶ 35.)

[5]    Case Nos. 05-32243, 05-32242. The Defendants have asked the Court to take judicial notice of the bankruptcy filings. At the hearing on this Motion, the Plaintiffs stated that they had no objection to the Court considering as fact that the bankruptcy proceedings were filed three (3) months before this lawsuit was filed.  The Plaintiffs have also filed two (2) adversary proceedings cases against Neal and Anderson. Those suits remain pending.

[6]    Should Plaintiffs elect to re-file this action, however, they would be well-served to consider the arguments raised by the Defendants regarding the sufficiency of the claims as pled in the Complaint.

[7]    Plaintiffs submitted the affidavit of R. Keith Johnson, the Bankruptcy Trustee for the two General Partners. Although the Defendants have objected to the Court considering the Trustee's affidavit on the ground that it is outside the pleadings, the Court finds that the affidavit does not assist Plaintiffs on this issue because the Trustee expressly disavows any authority to manage the Funds or otherwise pursue the litigation at issue.  (Aff. ¶¶ 4, 7.)

[8]    Moreover, if, in fact, the Funds are (as Plaintiffs contend) essentially defunct and without management, this raises the issue of who would administer the distribution of any judgment ultimately obtained since such judgment would belong, not to the individual Plaintiffs, but to the Funds.  *See Pourroy*, 122 Cal. App. at 528, 10 P.2d at 818 ("[P]laintiffs assert in their brief that the corporation is 'actually dead' . . .[,] but if such be the fact, they are in no better position to maintain the action in behalf of the corporation because in the event judgment were given in their favor there would be no corporation to receive the benefit of the large sum of money awarded thereby.")